IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,               3:11-CR-00076-BR

            Plaintiff,                  OPINION AND ORDER

v.

DAVID JOHN OVIST,

            Defendant.


**S. AMANDA MARSHALL**
United States Attorney
**HANNAH HORSLEY**
**SCOTT ERIK ASPHAUG**
Assistant United States Attorneys
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1031

        Attorneys for Plaintiff

**MATTHEW A. SCHINDLER**
P.O. Box 324
Lake Oswego, OR 97034
(503) 699-7333

**PHILIP A. LEWIS**
210 S.W. Morrison Street
Suite 500
Portland, OR 97204
(503) 226-3498

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant David John Ovist's Motion (#241) for New Trial, Motion (#243) for Judgment of Acquittal, and Motion (#242) to Supplement the Record.  The Court concludes the record is sufficiently developed, and, therefore, oral argument would not be helpful in resolving these Motions.  For the reasons that follow, the Court **DENIES** Defendant's Motion for New Trial and Motion for Judgment of Acquittal and **GRANTS in part** Defendant's Motion to Supplement the Record as stated herein.

## BACKGROUND

On June 29, 2011, Defendant was charged in a Superseding Indictment with three counts of Bank Fraud in violation of 18 U.S.C. § 1344 and 12 counts of Wire Fraud in violation of 18 U.S.C. § 1343.

On November 23, 2009, the jury found Defendant guilty on the three counts of Bank Fraud and nine of the twelve counts of Wire Fraud (Counts 4-8, 11-12, 14-15).

On February 22, 2013, Defendant filed a Motion for New Trial, a Motion for Judgment of Acquittal, and a Motion to Supplement the Record.

## DEFENDANT'S MOTION (#241) FOR A NEW TRIAL

2 - OPINION AND ORDER

Defendant moves for a new trial on the grounds that
(1) the Court's evidentiary rulings under Federal Rule of
Evidence 403 that limited Defendant's cross-examination of Jacob
Shoop, Rick Shoop, and Don Kazlauskas denied Defendant the right
to confront witnesses as guaranteed under the Sixth Amendment;
(2) the Court's pretrial rulings denying Defendant the ability to
question lender witnesses about fraud allegedly perpetrated by
their respective institutions "effectively directed a verdict
against" Defendant and denied him the right to confront witnesses
as guaranteed under the Sixth Amendment; and (3) the Court's
refusal to allow Defendant to offer certain exhibits denied
Defendant the opportunity to present a defense as to allegations
that he was aware of fraudulent misrepresentations regarding
certain borrowers' intent to make properties their primary
residences.

## I.   Standards

Federal Rule of Criminal Procedure 33(a) provides in
pertinent part:  "Upon the defendant's motion, the court may
vacate any judgment and grant a new trial if the interest of
justice so requires."  The defendant carries the burden to
justify the need for a new trial.  The determination whether the
defendant has satisfied that burden rests in the discretion of
the court.  *United States v. Mack*, 362 F.3d 597, 600 (9th Cir.
2004).  If the court concludes the evidence is sufficient to

sustain the verdict but a serious miscarriage of justice may have occurred, the court may grant the motion for a new trial.  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000).

## II.  Limits on cross-examination of Witnesses Jacob Shoop, Rick Shoop, and Don Kazlauskas

As noted, Defendant contends the Court's rulings that limited Defendant's cross-examination of Jacob Shoop, Rick Shoop, and Don Kazlauskas denied Defendant the right to confront witnesses as guaranteed under the Sixth Amendment.

### A.  The Law

The Confrontation Clause of the Sixth Amendment "guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'"  *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007)(quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)).  This right "includes 'the right of effective cross-examination.'"  *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

"Effective cross-examination is critical to a fair trial because "'[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'"  *Id.* at 1103 (quoting *Davis*, 415 U.S. at 316).  The Ninth Circuit has "emphasized the policy favoring expansive witness cross-examination in criminal trials."  *Id.* (citations omitted).

4 - OPINION AND ORDER

The Ninth Circuit has identified three factors that courts must consider when determining whether a defendant's right to cross-examination was violated:

> (1) [whether] the excluded evidence was relevant;
>
> (2) [whether] there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and
>
> (3) [whether] the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness.

*Id.* (quotation omitted).

## B.   **Cross-examination of *Jacob Shoop***

Defendant contends the Court erroneously limited his cross-examination of Jacob Shoop when the Court terminated Defendant's questions about lies that Jacob Shoop told police in an investigation unrelated to this matter. Although the Court found the testimony at issue was probative of Jacob Shoop's credibility, the Court concluded the probative value of that testimony was outweighed by various Rule 403 concerns. The Court adheres to its ruling.

In addition, the Court concludes the jury had sufficient information to assess the credibility of Jacob Shoop through his testimony on direct and cross-examination. For example, Jacob Shoop testified he had pleaded guilty and agreed to cooperate with the government in exchange for the government requesting the Court to reduce his sentence. Jacob Shoop

5 - OPINION AND ORDER

acknowledged he was facing prison time and that he hoped for leniency as a result of his cooperation in this matter. Defendant also questioned Jacob Shoop about the lies and fraud that he engaged in with respect to the scheme for which he was convicted. Defendant asked Jacob Shoop about his work as a professional poker player and suggested Shoop was adept at lying and deceiving people as a result of his poker expertise. Jacob Shoop was also questioned extensively about his prior convictions. Before the Court ended Defendant's line of cross-examination, Shoop testified about a murder investigation involving his former roommate and stated he initially lied to the police during that investigation, that he testified on behalf of the prosecution in that case, and that he was never charged in that matter. In any event, the Court properly instructed the jury to consider the testimony of cooperating witnesses like Jacob Shoop with greater caution than the testimony of other witnesses.

On this record the Court concludes the limitation on cross-examination of Jacob Shoop about lies that he told police in the past on an unrelated matter was not a violation of Defendant's Sixth Amendment rights.

### C.   Cross-examination of Rick Shoop

The Court also prevented Defendant from questioning Rick Shoop about lies that he told in the same unrelated matter

about which Jacob Shoop had testified. On cross-examination, however, Defendant elicited testimony from Rick Shoop that he had pled guilty and agreed to cooperate with the government in exchange for the government requesting the Court to reduce his sentence. Rick Shoop acknowledged he was facing prison time and that he hoped for leniency as a result of his cooperation. On cross-examination Defendant questioned Rick Shoop about the lies and fraud that he engaged in with respect to the scheme for which he was convicted and about which he was testifying. Defendant also questioned Rick Shoop about his prior convictions, and the Court instructed the jury to consider his testimony as a cooperating witness with caution.

On this record the Court concludes the jury had sufficient information to assess the credibility of Rick Shoop and the limitation on Defendant's cross-examination of Rick Shoop about the unrelated matter was not a violation of Defendant's Sixth Amendment rights.

**D.    Cross-examination of Don Kazlauskas**

Defendant contends the Court violated Defendant's right to confront the witnesses against him as guaranteed under the Sixth Amendment when the Court limited Defendant's ability to inquire on cross-examination into the circumstances of Don Kazlauskas's involvement in a scheme related to Victory Lane Farms. Defendant asserts the limits the Court placed on his

7 - OPINION AND ORDER

cross-examination prohibited him from adequately establishing
that Kazlauskas lied numerous times under oath during a civil
trial related to Victory Lane Farms and in later statements made
regarding that matter pursuant to the proffer agreement.
Defendant also contends the Court reversed its pretrial ruling as
to the extent Defendant could cross-examine Kazlauskas.

On January 11, 2013, the government filed a Motion in
Limine in which it sought to limit witness-impeachment testimony.
In particular, the government explained Kazlauskas and defense
witness Terry Emmert were involved in civil litigation against
each other related to the Victory Lane Farms transaction.  Emmert
alleged in the Victory Lane Farms litigation that Kazlauskas had
encouraged a third party, Randy Delany, to perjure himself to
Kazlauskas's advantage.  Delany was never called as a witness,
but he wrote a letter to Emmert setting out his belief that
Kazlauskas had suborned perjury.  The government agreed Emmert
could offer his opinion of Kazlauskas's reputation for
truthfulness in this case, but the government contended Defendant
could not elicit additional testimony as to Kazlauskas's other
character traits.  The government also sought to narrow testimony
related to the issue of Kazlauskas's alleged perjury and objected
to any effort by Defendant to offer the letter that Delany wrote
to Emmert and other extrinsic evidence if Kazlauskas denied
suborning perjury.  At the Pretrial Conference on January 23,

2013, Defendant indicated he did not intend to go beyond cross-examining Emmert as to his opinion of Kazlauskas's reputation for truthfulness.  Accordingly, the Court concluded the government's Motion in Limine was moot.

During the cross-examination of Kazlauskas at trial, Defendant asked about the nature of the Victory Lane Farms facility, how much Kazlauskas paid for the facility, how Kazlauskas obtained the money to buy the facility, and whether Kazlauskas was attempting to sell Emmert something that Kazlauskas did not own in the Victory Lane Farms transaction. The government objected several times.  The Court sustained the government's objections and ruled:  "We're not getting into the other specifics.  You may inquire about reputational issues, as we've discussed, relative to a witness who has yet to testify. We need to move on, and otherwise keep your relevant pattern, please."  Trial Tr. at 84 (Feb. 4, 2013).  The Court and the parties engaged in the following exchange:

> BY MR. SCHINDLER:
>
> Q.   (Pause.) Were your in-laws a part of that
>      arrangement as well?
>
> MS. HORSLEY:    Objection, your Honor, relevance.
>
> THE COURT:     Sustained.
>
> BY MR. SCHINDLER:
>
> Q.   (Pause.)  Mr. Kazlauskas, you were part of a
>      plan to present perjured testimony against
>      Mr. Emmert in your civil case, were you not?

MS. HORSLEY:     Objection, your Honor, argumentative.

THE COURT:     The objection is sustained.

We're not going to get into the merits of the lawsuit between the witness and Mr. Emmert, as I've ruled already.

You can establish there may be no love lost between them, but let's move on.

And please don't characterize that which we do not have time to litigate or prove.

BY MR. SCHINDLER:

Q.   Mr. -- Mr. Emmert ended up with a judgment against you at some point in time.  Is that right?

A.   I answered earlier, cross-judgment.

Q.   A cross -- a cross-judgment?

A.   Yes.

Q.   So it's your testimony here today that you never paid or offered to pay anyone or present any perjured testimony –

THE COURT:     Counsel –

MS. HORSLEY:     Objection.

THE COURT:  -- that's it.  Your cross-examination is over, if you continue to violate my instructions.  I have told you we are not getting into specifics.

Jurors, disregard the inference.  This is not evidence.

Trial Tr. at 84-85 (Feb. 4, 2013).  The limitations on

Defendant's cross-examination were consistent with the Court's

pretrial ruling.  In addition, the limitations on Defendant's

10 – OPINION AND ORDER

cross-examination were a proper exercise of the Court's discretion to limit the scope of testimony to specific conduct probative of Kazlauskas's character for truthfulness and to matters directly relevant to the issues in this trial.

In any event, the record reflects Kazlauskas testified on cross-examination that he had been convicted of a felony, that he pled guilty, and that he agreed to cooperate with the government in exchange for the government requesting the Court to reduce his sentence. Kazlauskas also acknowledged he was facing prison time and that he hoped for leniency as a result of his cooperation.

Defendant also questioned Kazlauskas about his lies, fraud, and forgery of documents with respect to the scheme for which he was convicted. Kazlauskas testified he lied to the Federal Bureau of Investigation (FBI) the first time he met with the lead investigator and that he was not being charged for those lies. Kazlauskas testified he has not filed a tax return or paid taxes for the last five years. Defendant also called two witnesses to testify as to their opinions of Kazlauskas's reputation for untruthfulness, both of whom testified Kazlauskas had a reputation for untruthfulness. Moreover, Defendant cross-examined every government witness who had dealings with Kazlauskas as to their opinion of Kazlauskas's reputation and character for truthfulness, and they each testified Kazlauskas

11 - OPINION AND ORDER

was not a truthful person.

Finally and in any event, Defendant did not call Emmert to offer reputation evidence about Kazlauskas's character for truthfulness despite the Court's ruling that it would admit such evidence.

On this record the Court concludes the jury had more than sufficient information to assess the credibility of Kazlauskas, and, therefore, the Court's limitation on Defendant's cross-examination of Kazlauskas was not a violation of Defendant's rights under the Sixth Amendment.

**III. Limits on cross-examination of lender witnesses**

Defendant asserts the Court erred in its pretrial rulings that prohibited Defendant from asking lender witnesses about alleged fraud related to their general lending standards perpetrated by their respective financial institutions over time.

On June 6, 2012, Defendant filed a Motion in Limine to Allow Evidence of Admissions of a Party Opponent in which Defendant asserted the various complaints and orders issued by the Federal Housing Finance Agency (FHFA), Securities and Exchange Commission (SEC), and the Federal Reserve contained admissions by "the government which militate against [Defendant's] alleged misrepresentations being material."    On July 11, 2012, the Court issued an Opinion and Order in which it denied Defendant's Motion in Limine on two grounds:  (1) The complaints and orders

12 - OPINION AND ORDER

were not admissions of a party opponent under Federal Rule of
Evidence 801(d)(2) and (2) even if they were admissions of a
party opponent, they were not relevant.  Specifically, the Court
concluded "allegations by the FHFA, SEC, and Reserve Board made
in unrelated civil proceedings are not admissions by a party
opponent under Rule 801(d)(2) because the FHFA, SEC, and Reserve
Board are not the same party as the DOJ for purposes of this
action."

On December 7, 2012, Defendant filed a Motion to Reconsider
Denial of Defendant's Motion to Allow Evidence of Admissions of a
Party Opponent in which Defendant pointed to an October 24, 2012,
complaint-in-intervention filed in the United States District
Court for the Southern District of New York by the Department of
Justice through the United States Attorney for the Southern
District of New York against Bank of America Corporation as
successor in interest to Countrywide Financial Corporation and
asserted the allegations contained therein were admissions of a
party opponent because they were made by a United States Attorney
on behalf of the Department of Justice, and, therefore, they were
admissible in this action under Federal Rule of Evidence
801(d)(2).

On January 9, 2013, the Court issued an Opinion and Order
granting Defendant's Motion to the extent that the Court
reconsidered its denial of Defendant's Motion to Allow Evidence

13 - OPINION AND ORDER

of Party Opponent.  The Court, however, adhered to its July 11, 2012, Opinion and Order denying Defendant's Motion.

In its Motion for New Trial Defendant reiterates the arguments contained in its two Motions in Limine and stated at the oral arguments on the Motions.  This Court has considered Defendant's arguments again and concludes they do not provide a basis to alter the Court's rulings on the Motions in Limine or to grant a new trial in this matter.

## IV. Exclusion of insurance documents

Defendant contends the Court's refusal to allow Defendant to offer five exhibits containing homeowners-insurance requirements for primary residences denied him the opportunity to present a defense to allegations that he was aware of various borrowers' fraudulent representations that they intended to make particular properties their primary residences.  The Court excluded these exhibits because Defendant failed to establish their admissibility and because they were cumulative of Defendant's testimony.

Even though the Court did not allow Defendant to offer the documents, the Court allowed Defendant to testify about the documents and how they supported his belief that the borrowers' representations were true as to their intent to live in the properties as primary residences.  The Court also allowed Defendant to submit additional testimony and exhibits to support

14 - OPINION AND ORDER

his defense that he believed the loans were for the borrowers' primary residences, and, therefore, that he did not knowingly make material misrepresentations about that issue in the loan applications.  For example, Defendant presented evidence as to affidavits of occupancy, which are closing documents that show the borrower intended to occupy the property as a primary residence.  In addition, a number of the affidavits of occupancy were admitted at trial as defense exhibits.  *See, e.g.*, Def.'s Exs. 532, 563, 574, 577-78, 706, 712, 770, 884.  Defendant also testified escrow officers always reviewed the closing documents, including documents that addressed borrower occupancy, with the borrowers at the loan closings that Defendant attended, and Defendant believed the lenders verified the accuracy of the occupancy affidavits.  Defendant also questioned several witnesses about certifications and affidavits of occupancy and about the occupancy inspections that Defendant believed the lenders conducted to verify those documents.  These witnesses included borrower Opal Franklin, lender witnesses Thomas Switzer and Michael Lukas, and escrow officer Erin Edinger Drum.

On this record the Court concludes the insurance exhibits were properly excluded because their admissibility was not established and because they were cumulative of Defendant's testimony, the testimony of others, and Defendant's exhibits. The Court, therefore, concludes Defendant has not established

that exclusion of these exhibits is sufficient to warrant a new trial.

In summary, the Court concludes Defendant has not established a new trial is required in the interests of justice. Accordingly, the Court denies Defendant's Motion for a New Trial.

**DEFENDANT'S MOTION (#243) FOR JUDGMENT OF ACQUITTAL**

Defendant moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) on the ground that the evidence at trial was insufficient to prove the elements of bank and wire fraud beyond a reasonable doubt.

**I.    Standards**

Federal Rule of Criminal Procedure 29 provides a court, on the motion of a defendant, must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction.

"Evidence is sufficient to support a conviction, if 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Moses*, 496 F.3d 984, 987 (9th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). *See also United States v. Tello,* 600 F.3d 1611, 1164 (9th Cir. 2010)(When deciding a motion for judgment of acquittal, the court "view[s]

16 - OPINION AND ORDER

the evidence in the light most favorable to the government to
determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.").
The court must resolve any conflicts in the evidence in favor of
the jury's verdict.  *United States v. Alvarez-Valensuela*, 231
F.3d 1198, 1201-02 (9th Cir. 2000).

## II.  Analysis

To prove bank fraud beyond a reasonable doubt, the
government had to establish that (1) Defendant knowingly carried
out a scheme to obtain money from the financial institution named
in each count by making false or fraudulent statements or
representations; (2) Defendant knew the statements or
representations were false; (3) the statements or representations
were material (that is, they had a natural tendency to influence
or were capable of influencing the financial institution to part
with money or property);
(4) Defendant acted with the intent to defraud; and (5) the
financial institution named in each count was federally insured.
*See Neder v. United States*, 527 U.S. 1, 20-25 (1999).

To prove wire fraud beyond a reasonable doubt, the
government had to establish that Defendant (1) devised a material
scheme to obtain money through materially false statements or
representations, (2) used or caused to be used wires in
interstate commerce to further the scheme, and

17 - OPINION AND ORDER

(3) specifically intended to defraud.  *See United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003).  *See also United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004).

Although Defendant moves to set aside the jury's Verdict on all twelve counts of conviction, Defendant does not make any specific allegations of insufficiency with respect to any particular elements or counts.

The government called 22 witnesses and presented approximately 130 exhibits at trial to prove the elements of both crimes as to each count beyond a reasonable doubt.  As to the twelve counts of conviction, the government proved Defendant acted with the intent to defraud between August 2006 and February 2008 when he, other real-estate investors, and straw buyers obtained mortgage loans to purchase multiple residential properties in Oregon and Washington based on false and material misrepresentations about the qualifications and intentions of various borrowers.  In addition, the government established Defendant worked with others to carry out a fraudulent scheme to obtain money from multiple lenders by means of similar false statements and representations.  Several of the individuals involved in these schemes testified at trial.  For example, Kazlauskas testified he was a real-estate investor, handyman, and contractor who had worked with Defendant for several years doing real-estate deals of various kinds.  Kazlauskas testified he had

bad credit and was not able to obtain loans in his own name, so
he recruited other investors and straw buyers with good credit to
obtain loans in their names to purchase multiple properties to
fix up and then to rent or to flip.  The evidence established
Defendant knew what Kazlauskas was doing and Defendant often
benefitted from Kazlauskas being the seller of the property or a
recipient of a portion of the sales proceeds on properties that
were owned in other investors' names.  Several of the borrowers,
including Sheri McClanahan, Jacob Shoop, Eric Garner, Carly
Godden, Brandon Barnett, Linda Beachell, and Opal Franklin,
testified about their roles in the scheme and their contacts with
Defendant.  Some of the borrowers testified they had agreed to
purchase the properties as an investment with the hope that the
properties could be fixed up and/or rented out for a time and
then sold for a percentage of the profit.  Other borrowers
testified they were straw buyers who agreed to allow their names
and credit to be used to purchase the properties in exchange for
a flat fee with the expectation that one of the investors would
make the mortgage payments and maintain and manage the property
until it was sold.  Instead each of the loans went into default
and resulted in a loss to the lender.

    The government also presented evidence that established
Defendant knowingly prepared multiple Uniform Residential Loan
Applications that included one or more material false statements

19 - OPINION AND ORDER

or representations regarding the borrowers' intentions to live in the property as a primary residence or as to the borrowers' employment, income, rental income, assets and/or other mortgages and liabilities owed.  In addition, the evidence showed Defendant knowingly asked Kazlauskas to prepare false and fraudulent documents that Defendant submitted to lenders in support of the loan applications, including verifications of employment, verifications of deposit, and rental applications.  The material misrepresentations about the borrowers' financial qualifications fraudulently inflated the borrowers' income and assets and/or deflated their liabilities on the mortgage-loan applications, thereby altering the borrowers' true debt-to-income ratios. Witnesses from each of the banks and lending institutions testified these misrepresentations were material under their underwriting standards for the loans at issue.  The evidence established Defendant submitted the loan applications to the banks and lenders identified in the Superseding Indictment with the intent to defraud and knowing the loans would be underwritten and approved based upon those materially false representations. Each of the loans was approved and funded based upon the material misstatements contained in the mortgage-loan applications and supporting documentation prepared and/or submitted by Defendant.

On this record the Court concludes Defendant has not established the evidence was insufficient to sustain a conviction

as to any of the twelve counts on which Defendant was convicted. Accordingly, the Court denies Defendant's Motion for Judgment of Acquittal.

### DEFENDANT'S MOTION (#242) TO SUPPLEMENT THE RECORD

Defendant seeks to mark for identification the excluded evidence previously labeled Defendant's Exhibits 946, 957, 962, 964, and 969 and to append them to the trial record as an offer of proof pursuant to Federal Rule of Evidence 103(a)(2). Defendant notes the Court has discretion to correct the record pursuant to Federal Rule of Criminal Procedure 36.

The government objects to Defendant's Motion to the extent that Defendant seeks to expand the offer of proof presented to the Court during trial as to these exhibits, but the government stipulates to certification of these documents in a supplemental record so they are available to the Ninth Circuit Court of Appeals for review pursuant to Federal Rule of Appellate Procedure 10(e)(2)(A) and (B).

In order to facilitate Defendant's appellate presentation of his issues involving these exhibits, the Court agrees with the government that they should be made part of the appellate record. The Court also agrees, however, that Defendant may not expand post-trial the offer of proof on which the Court made its rulings as to these exhibits during trial.

21 - OPINION AND ORDER

Accordingly, the Court grants in part this Motion to the extent that the Court permits these exhibits to be presented as part of Defendant's appellate record for review of the Court's rulings about this evidence during trial.  The Court otherwise denies Defendant this Motion.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#241) for New Trial and Motion (#243) for Judgment of Acquittal and **GRANTS in part** Defendant's Motion (#242) to Supplement the Record as stated herein.

IT IS SO ORDERED.

DATED this 22nd day of March, 2013.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge